**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**



Charles M. Caldwell
United States Bankruptcy Judge

**Dated: April 11, 2013**

_____

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISON

In re:                                            :

Patrick W. Yarbrough,                             :         **Case No. 10-59411**
            Debtor.

### ORDER GRANTING DEBTOR'S MOTION FOR ORDER REQUIRING U.S. BANK, N.A. TO EVALUATE MORTGAGE LOAN FOR PARTICIPATION UNDER THE HOME AFFORDABLE MODIFICATION PROGRAM (DOC. NO. 39)

　　　Nearly one year ago on May 17, 2012, the Debtor filed this Motion to prompt his mortgage company, U.S. Bank, N.A. ("U.S. Bank"), to consider whether he is eligible for a loan modification under the Home Affordable Modification Program ("HAMP"). The request was not to compel a result, but merely to require U.S. Bank to evaluate whether the Debtor is HAMP-eligible. According to Debtor's Motion, U.S. Treasury Directive 10-02 requires lenders to consider upon request whether Chapter 7 and 13 debtors may obtain a HAMP modification. In an Objection filed by U.S. Bank on June 5, 2012, it asserted that there is no private right of action to enforce the directive, and that this Court is without jurisdiction and/or authority to issue any order. A hearing was set for December 20, 2012.

　　　Despite having drawn a line in the sand, U.S. Bank and the Debtor executed an agreed order to obtain a continuance of the hearing until January 15, 2013. This Order expressed that the purpose was to, "…allow U.S. Bank to review this matter for loan modification."  On January 15, 2013, the case was called, and Mr. Christopher J. Spiroff, Debtor's Counsel, appeared. However, U.S. Bank's Counsel, Jill L. Fealko, was unable to attend, but sent substitute counsel. At that time Mr. Spiroff represented that the Debtor submitted the loan modification request on June 16, 2012, and that according to Ms. Fealko her client, U.S. Bank, still needed more time to consider the request. Mr. Spiroff represented that by the continued date there may be an answer from U.S. Bank, based upon Ms. Fealko's statements that she was working with U.S. Bank to obtain a response. Given these reported facts, another continuance was granted to April 9, 2013.

When the case was called on April 9, 2013, Mr. Spiroff was present. Ms. Fealko did not appear, but sent an associate from her firm to represent U.S. Bank. Mr. Spiroff provided a summary of actions taken since May 17, 2012, when the instant Motion was filed, including:

- On June 5, 2012, U.S. Bank provided Debtor the loan modification forms that were completed and returned to U.S. Bank.
- On October 3, 2012, Ms. Fealko advised Mr. Spiroff that the wrong forms had been used, and she provided new ones that were completed and returned to Ms. Fealko on October 29, 2012.
- On January 15, 2013, U.S. Bank sent a third set of forms to Mr. Spiroff that were then completed and returned to U.S. Bank and Ms. Fealko on January 28, 2013.
- On February 27, 2013, Ms. Fealko acknowledged receipt of this third set of forms.

Despite these efforts, U.S. Bank's counsel at the April 9, 2013, hearing was not aware of the status of the loan modification, and reiterated that this Court did not have jurisdiction and/or authority to take any action. The Court then directed U.S. Bank's Counsel to call his client for telephonic participation in the hearing. However, the client contact person was not in the office. In addition, the only information obtainable was that the loan modification forms were evaluated by U.S. Bank and then sent to the Department of Housing and Urban Development for approval. We were unable to obtain any indication whether U.S. Bank recommended approval of the loan modification request.

To address the merits of the instant Motion context must be discussed. First, the bankruptcy system is populated by debtors and creditors, and functions through their active participation in the process. Debtors are most significantly motivated by their desire to retain homes for their families, including young children, as we have in this case. For such reasons, debtors are generally present and actively participating in the cause to reorganize their finances. On the other hand, creditors, especially, large institutional creditors, are largely absent from the process, and suffer no direct and personal impact from their action or inaction. While their profits rise and fall based upon deposits and loans, it is extremely difficult for their customers to obtain information and receive responses, especially if they are in default.

Second, this case is a prime example of an all too frequent occurrence, of not being able to find the creditor-client and invite his/her participation in the bankruptcy process. It is not clear that even their counsel can readily find a knowledgeable and authorized person to aid their own representation. This ability to contact and communicate is extremely important because it is the only means to promptly move cases to some conclusion and minimize costs to all parties. Basic sound business judgment and professional courtesy dictate that it not require the completion of three sets of forms over nearly a year to receive an answer to the fundamental question of whether there is some way to retain the family home.

Turning to the question of authority or jurisdiction, first recall the Debtor never asked that this Court compel U.S. Bank to approve a loan modification. Second, the Debtor is in the middle of consummating a Chapter 13 plan that was confirmed more than two years ago on November 18, 2010. Under the plan U.S. Bank is being paid by the Chapter 13 Trustee, $1,228.00 per month for the current mortgage payments. Also, U.S. Bank is scheduled to receive payment in full for the pre-petition mortgage arrearage of $14,000.00. To date, there have been no plan payment defaults.

2

Third, all creditors, including U.S. Bank, are not only bound by the terms of the confirmed plan (11 U.S.C. §1327(a)), but also they only will be paid if the Debtor retains the financial ability to continue making prompt plan payments.   Indeed, as part of the plan confirmation process, bankruptcy courts must find that, "…the debtor will be able to make all payments under the plan and to comply with the plan…" 11 U.S.C.§1325(a)(6). Fourth, bankruptcy courts are  obligated to, "…as soon as practicable after completion by the debtor of all payments under the plan, … grant the debtor a discharge of all debts provided for by the plan…" 11 U.S.C. §1328(a).  The approval or denial of the loan modification request undoubtedly will have significant affect over whether the Debtor will be able to continue to make plan payments and ultimately receive a discharge.

This Court finds and concludes that it has the authority and/or jurisdiction to make every effort to ensure that debtors complete their plans, that their creditors get paid on a timely basis and in accordance with confirmed plans, and that ultimately a discharge is promptly issued.  11 U.S.C. §105(a).  This is what the fundamental bankruptcy concepts of orderly and equitable distributions to creditors and providing a fresh start to debtors, is all about.  Surely, just obtaining a timely response either way, would aid this cause.

As a result, the Court **GRANTS** the above-captioned Motion.

It is further **ORDERED** that on or before May 13, 2013, U.S. Bank shall file and serve upon Debtor's Counsel a report that details all actions, including dates, which have been taken to process the loan modification requests.  The report shall include a statement whether U.S. Bank has recommended approval of the loan modification, and if not, the factual, regulatory, and legal bases for denial, including copies of all documentation relied upon.  If the loan modification is approved, the report shall detail the specific terms of the loan modification offered to the Debtor.

It is further **ORDERED** that in the event U.S. Bank fails to comply with this Order, the Court will commence a separate contempt proceeding that may result in the imposition of costs and damages for any actions of  U.S. Bank that are found to be in violation of this Order.

**IT IS SO ORDERED.**

**Copies to:**

Default List
Residential Mortgage Default Management, U.S. Bank Home Mortgage, 4801 Frederica Street, P.O. Box 20005, Owensboro, Kentucky 42304-0005